**MINTER et al. v. POUNDS et al.   (No. 3514.)**

Court of Civil Appeals of Texas. Texarkana.
Feb. 22, 1928.

Rehearing Denied March 8, 1928.

1. **Husband and wife ⬅⬆255—Property purchased by husband with wife's separate means is wife's separate property.**

Where property is purchased by husband with wife's separate means, and she can trace her money to it, it is wife's separate property.

2. **Husband and wife ⬅⬆264—Evidence held not to sustain finding that land taken in husband's name was purchased with wife's separate means, and hence was her separate property.**

Evidence *held* insufficient to sustain finding of jury that land taken in name of husband was

in fact purchased with separate means of wife, and hence was her separate property.

3. **Evidence ⬅⬆271(17)—Where wife's heirs sued husband's devisees for land in husband's name as wife's separate property, wife's statement that husband had every cent of her money held inadmissible as self-serving.**

Where deceased wife's heirs sued deceased husband's devisees in trespass to try title, on ground that land taken in husband's name was in fact purchased with wife's separate means, and hence was wife's separate property, wife's statement that husband had every cent of money that she had *held* inadmissible as self-serving declaration.

4. **Husband and wife ⬅⬆262(1)—Land acquired in husband's name during marriage relation, chiefly on credit, presumably was community property.**

Where land, taken in name of husband, was acquired during existence of marriage relation, for the most part on credit, presumption was that land was community property.

5. **Husband and wife ⬅⬆262(1)—Where release merely evidenced payment of vendor's lien notes, presumption was that each note was paid when due.**

In such case, where release merely evidenced payment of vendor's lien notes, and there was no proof as to when the payments were made, presumption was that each note was in fact paid when it became due.

6. **Husband and wife ⬅⬆264—Evidence held not to show that land taken in husband's name was purchased with his separate means, and hence was his separate property.**

Evidence *held* insufficient to show that land taken in name of husband during existence of marriage relation was in fact purchased with separate means of husband, and hence was his separate property.

Appeal from District Court, Hopkins County; R. T. Wilkinson, Judge.

Suit in trespass to try title by Lillian Pounds and others against William Minter and others. From a judgment in favor of plaintiffs, defendants appeal. Modified and affirmed.

The appellees, surviving children of Mrs. Mattie Minter, deceased, brought the suit in trespass to try title to three separate tracts of land. In the trial they recovered one of the tracts only, the tract containing 70 acres of land. The ownership simply, as community or separate property, of that tract of land is involved in the appeal. Mrs. Mattie Minter was first married to John Denny. The appellees are the children of that marriage. John Denny died December 16, 1891. On October 12, 1892, Mrs. Mattie Denny was married to M. O. Minter. Mrs. Mattie Minter (formerly Mrs. Denny) died May 7, 1907, M. O. Minter died March 24, 1925. There were no children of that marriage. The appellants are the sisters, brother, nieces, and nephews

of M. O. Minter. The appellees claim that the 70 acres was paid for entirely out of the separate means of their mother, Mrs. Mattie Minter. The appellants claim that M. O. Minter purchased and paid for the land out of his own separate means, and bequeathed the same to them by will duly probated.

On May 21, 1923, M. O. Minter made a will, and it was duly probated in July, 1925. He bequeathed the 70 acres, besides other lands, to the appellants. A warranty deed to the 70 acres was executed by C. A. Hackelman and wife to M. O. Minter, dated November 7, 1902. The deed recited:

"$100.00 cash and the further consideration of the said M. O. Minter assuming to pay four notes, three for $166.66 each, due January 1, 1903, 1904 and 1905, and one for $250.00 due January 1, 1906, being the same notes described in deed from John R. Masters to C. Hackelman on September 11, 1901."

A vendor's lien was retained in said deed, to secure payment of the notes. The deed was duly recorded in deed records on November 7, 1902. The jury made the findings of fact on special issues that the recited sum of $100 cash, as well as all the notes, was paid out of the separate means of Mrs. Mattie Minter.

The facts appear substantially as follows: At the death of John Denny he owned a home in which the family resided. This continued to be the home of appellees' mother to the time of her death. He also had a one-third interest in a small grocery store. M. O. Minter also owned a one-third interest in the business. A third interest in the business was worth "$600," as far as made to appear. After the death of John Denny, it seems that George Denny, a brother, acquired the one-third interest owned by John Denny. The terms of purchase do not appear. The amount George Denny paid for the one-third interest is not undertaken to be shown, and it is not shown to whom the money was paid. M. O. Minter continued in the business until about 1899, when he retired from it on account of ill health. John Denny, at his death, left life insurance to the amount of $2,000 to his wife. She collected it. There is no direct evidence tending to show what was done with the money after collection. Two years before the death of Mrs. Mattie Minter, her son died, leaving insurance to his mother of $2,000. She collected it. There is no direct evidence tending to show what was done with the money after collection. Mrs. Minter was shown to have been an economical woman, and was engaged in running a boarding house until several months before her death. She was physically incapacitated to work for several months before she died. There was some evidence to show that M. O. Minter was economical, and made and saved money both before his marriage and after his wife died.

It was also shown that he made and saved money during married life.

Circumstances were relied upon to trace and show the separate funds of Mrs. Minter were paid in the purchase of the 70 acres. The circumstances are objected to, as appears later on.

A release of the vendor's lien in the conveyance of the 70 acres was offered in evidence. It shows that on December 9, 1909, J. R. Master, by attorney in fact, executed to C. Hackelman "a release of vendor's lien on 70 acres," reciting "full and final payment of vendor's lien notes aggregating $750 due January 1, 1904, 1905, and 1906, respectively, executed by C. Hackelman, payable to J. R. Masters." There is no evidence outside of the face of the instrument as to when or by whom the payments were made.

L. A. Clark, of Greenville, and Emmet Thornton, of Sulphur Springs, for appellants.

Dial & Brim, of Sulphur Springs, for appellees.

LEVY, J. (after stating the facts as above). [1-3] It is the established rule that, where property is purchased by the husband with the wife's separate means, it is the wife's separate property, if she can trace her money to the property for which it was paid. The simple question in the present case is whether the circumstances are sufficiently explicit to show that it was the separate means of the wife that paid for the property. There is no direct evidence tending to show that the consideration, in part or in whole, was paid out of the insurance money of the wife. Although the inference is allowable that the wife had separate means through insurance money sufficient to pay the consideration, still the circumstances relied upon to trace the insurance money to the payment of the consideration fail of legal force and effect to overcome the presumption to the contrary. The purported simple statement of the wife that her husband "had every cent of money she had" was objected to, and is here complained of as illegal evidence, in that it was hearsay and self-serving. The remarks were of a brief general nature, and not at all specific as to amount of money or as to the date or character of possession by the husband. It is a mere conjecture as to what "money" she was referring to—whether insurance money or money made in keeping boarders. The evidence is clearly within the restriction that it is not allowable to parties to support their claims by proving self-serving declarations. Hence that statement cannot be considered. And the purported single statement of the husband, relied on as an admission, to the effect that "the property belonged to his wife," is not of itself and alone of controlling weight, since satisfactory explanation is otherwise made by which its effect is counteracted. In this situation it may not be determined that

appellees discharged the burden of proof placed upon them to trace their mother's separate funds to the property. It would be mere conjecture to say so. Yet that conclusion would not operate to defeat appellees' recovery of any interest in the land, in view of the evidence in the record.

[4-6] It is conclusively shown that the 70 acres was acquired during the marriage, for the most part entirely on credit. The presumption would be that it was community property. It may not be determined that the presumption was overcome by evidence to the contrary. There was proof that a release of the vendor's lien notes was executed in 1909, after the death of the wife in 1907. While this release evidences payment of the vendor's lien notes, yet there is no proof as to when the payments were in fact made, or by whom. The presumption would be that each note was in fact paid when due. In this presumption, with no proof to the contrary, the payments were all made during the lifetime of the wife. It rests in mere conjecture that the separate funds of the husband were used in paying the notes or any part of the consideration for the land. It is not more certainly shown that the husband's separate funds, if any he had, went to pay the consideration than the community earnings. In such uncertainty the legal presumption that the 70 acres was community property is not sufficiently counteracted, and should stand established and of controlling weight. The appellees were therefore entitled to recover jointly, instead of the whole 70 acres, a one-half undivided interest therein. The appellants jointly were entitled to the other one-half interest, in virtue of the will of M. O. Minter.

The judgment is accordingly modified so as to allow appellees jointly to recover a one-half undivided interest in the 70 acres, and, as so modified, the judgment will be affirmed, the appellees to pay costs of appeal.